IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARC STRICKLAND, individually and as representative of the ESTATE OF MARC "JR" STRICKLAND, deceased, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:22-CV-0056-D |
| DALLAS INDEPENDENT SCHOOL DISTRICT, JOHN DOE COMPANY I, and JOHN DOE COMPANY II, | § § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Marc Strickland, individually and on behalf of the estate of Marc "JR" Strickland ("Junior"), (collectively, "plaintiffs") sue Dallas Independent School District ("DISD"), John Doe Company I, and John Doe Company II to recover on several federal- and state-law claims arising from Junior's death. DISD moves to dismiss plaintiffs' action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons explained, the court grants the motion and enters a Rule 54(b) final judgment in favor of DISD today. The court also denies plaintiffs' request for leave to amend, and it orders them to identify defendants John Doe Company I and John Doe Company II within 14 days of the date this memorandum opinion and order is filed.

I

In January 2020 Junior, a high school student, attended a high school basketball game at Ellis Davis Field House (the "Field House"),[1] which DISD owns and controls.[2] Although DISD provided walk-through metal detectors and metal-detector wands at the game, they were not used on the occasion in question.[3] Dekieaian Wheately ("Wheately"), another high school student, learned that DISD was not using metal detectors or wands to screen persons attending the game, and he brought a gun to the Field House.

Shortly after Wheately and Junior arrived at the Field House, some students began to fight.[4] As DISD police officers attempted to separate the students, Wheately pulled out a gun and shot Junior in the head and chest. Junior died following a few days on life support. Wheately received a 15-year prison sentence for shooting Junior.

The SAC alleges that plaintiffs reasonably believe that school district officials were well-aware that Wheately had a propensity for violence. Wheately had social media images

---

[1]In deciding DISD's Rule 12(b)(6) motion to dismiss, the court construes the second amended complaint ("SAC") in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]Plaintiffs allege that DISD's budget does not contain a line item for manned metal detectors, nor does it have a line item for "security measures."

[3]According to the SAC, DISD has "numerous policies and procedures that address security issues" and specific procedures for use of metal detectors. SAC ¶¶ 13, 17. But DISD has not updated these policies since 2007.

[4]It is not clear whether Junior or Wheately was involved in, or instigated, this fight. The SAC only alleges that the fight "ensued between some students."

of himself brandishing a gun, and these images were transmitted via DISD's wireless network.[5]

Plaintiffs' second amended complaint ("SAC") pleads claims against DISD under 42 U.S.C. § 1983 for violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.[6] DISD moves to dismiss under Rule 12(b)(6).[7] Plaintiffs oppose the motion, and, in the alternative, request leave to replead. The court is deciding the motion on the briefs.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiffs'] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original)

---

[5]They also allege that Dallas police department personnel viewed these images.

[6]Plaintiffs' SAC mentions in passing that they have standing to bring claims for equitable relief under the "First Amendment to the United States Constitution, the Tenth Amendment to the United States Constitution and related sections of the Texas Constitution." SAC ¶ 73. Although DISD moves to dismiss these claims, plaintiffs contend in their response brief that, aside from state law claims against the John Doe defendants, they "have solely alleged violations of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States," thereby appearing to withdraw all other claims. P. Resp. (ECF No. 46) at 6 (emphasis omitted). Accordingly, because plaintiffs acknowledge that they are not seeking relief under any constitutional provision besides the Due Process and Equal Protection Clauses, the court will only consider these claims.

[7]DISD does not seek dismissal of, and the court does not address the merits of, plaintiffs' claims against Doe Company I and Doe Company II, which are state- and common-law claims.

(internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive DISD's Rule 12(b)(6) motions to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

Under certain circumstances, a municipality is a "person" subject to suit under § 1983. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).[8] Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it

---

[8]Because plaintiffs are suing DISD, a municipal entity, they must satisfy the elements for *Monell* municipal liability. *See Moore v. Dall. Indep. Sch. Dist.*, 2008 WL 5000058, at *2 (N.D. Tex. Nov. 24, 2008) (Fitzwater, C.J.), *aff'd*, 370 Fed. Appx. 455 (5th Cir. 2010).

can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that plaintiffs adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id.* (citations omitted) (second alteration in original) (some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, plaintiffs must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals . . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that plaintiffs adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v.*

*Brown*, 520 U.S. 397, 404 (1997)).  Plaintiffs must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

      A plaintiff may also assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar.1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep.*

*Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018).

IV

To decide DISD's motion, the court need only address the third element of a *Monell* claim: whether plaintiffs have plausibly pleaded a constitutional violation. *See Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022) ("[W]ithout a predicate constitutional violation, there can be no *Monell* liability.").

A

The court first considers plaintiffs' Fourteenth Amendment equal protection claim.

1

DISD contends that the SAC contains no facts for the court to draw the plausible inference of intentional discrimination. Plaintiffs do not meaningfully respond.

2

Plaintiffs' Fourteenth Amendment equal protection claim fails because they have not plausibly pleaded discriminatory intent or that similarly-situated persons were treated differently. "[A] party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the [governmental] action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). He must show that he was treated differently from similarly-situated persons without a rational basis. *United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996); *see Sonnier v. Francis*, 217 Fed. Appx. 410, 411 (5th Cir. 1997) (per curiam) (addressing issue in context of whether application of § 570.21 violated right to equal protection). The crux of an equal

protection claim is that the complaining person was treated differently from similarly-situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiffs have not plausibly pleaded purposeful discrimination or that other similarly-situated individuals were treated differently than Junior. Rather, plaintiffs make the conclusory assertion that the "failures [of the] School Board violated the right of [Junior] to Equal Protection, a separate violation of the . . . Fourteenth Amendment of the Constitution of the United States." SAC ¶ 72 (emphasis omitted). The SAC is devoid of other facts—including Junior's race or the treatment of similarly-situated persons—to support their equal protection claim. *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (holding that plaintiff in § 1983 action must state specific facts, not merely conclusory allegations, to support his claim); *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (per curiam) (holding that district court correctly dismissed "unsubstantiated" claim of different treatment by similarly-situated individuals); *Barnett v. Shaw*, 2011 WL 2200610, at *4 (N.D. Tex. May 18, 2011) (Toliver, J.) ("Plaintiff has presented only vague and conclusory allegations, based solely on his personal, subjective belief that he was treated differently than other similarly situated males."), *rec adopted*, 2011 WL 2214383 (N.D. Tex. June 7, 2011) (Lindsay, J.); *see also Jackson v. Hall*, 2022 WL 1194692, at *8 (S.D. Miss. Jan. 27, 2022) (dismissing plaintiff's claim where he "fail[ed] to identify a purpose behind the defendants' purported discrimination. Likewise, he fail[ed] to identify similarly situated individuals, i.e., individual[s] similar 'in all relevant respects,' who were treated differently than him."), *rec. adopted*, 2022 WL 731530 (S.D. Miss. Mar. 10, 2022).

In sum, because plaintiffs have not "shown" that Junior was discriminated against "due to purposeful discrimination or any impermissible motive," "[f]or that reason alone, [they have] stated no viable equal protection violation." *Branch v. Berkebile*, 2008 WL 3155137, at *3 (N.D. Tex. July 30, 2008) (Ramirez, J.), *rec. adopted*, 2008 WL 3155137 (Fitzwater, C.J.). Additionally, plaintiffs have not alleged any facts to support the reasonable inference that Junior was treated differently from those situated-similarly—the crux of an equal protection claim. *See Russell v. Cockrell*, 2003 WL 21750862, at *7 (N.D. Tex. July 25, 2003) (Ramirez, J.), *rec. adopted*, 2003 WL 21750862 (Fitzwater, J.). The court dismisses plaintiffs' Fourteenth Amendment equal protection claim.

B

The court next turns to plaintiffs' Fourteenth Amendment due process claim.

1

DISD maintains that plaintiffs' due process claim fails because, absent a few limited exceptions, the Due Process Clause does not protect against private violence. DISD also contends that one of the limited exceptions—when there is a "special relationship"—is inapposite. This exception is limited to when a public entity holds a person against his will, as with a foster child or state prisoner; not a public school student. Furthermore, DISD posits that another one of the exceptions—the state-created danger exception—does not apply because the Fifth Circuit has not recognized this doctrine. And DISD maintains that, even if the exception did exist, it would not apply because plaintiffs have not alleged that DISD placed Junior in a dangerous environment or knew of imminent danger to Junior's safety.

Plaintiffs respond that DISD's arguments fail because the case law on which it relies is inapposite: the case law only addresses pecuniary damages, and plaintiffs seek equitable relief.[9] And plaintiffs contend that DISD does not challenge the type of relief they may seek (i.e., equitable relief), thereby waiving any challenged to their constitutional claims. Finally, plaintiffs also add that DISD has a duty to keep the school community safe, and it failed to do so.

2

The Fourteenth Amendment Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Supreme Court has long recognized that the Due Process Clause is more than a guarantee of procedural fairness and 'cover[s] a substantive sphere as well,

---

[9]In describing DISD's arguments for dismissal of their due process claim, plaintiffs appear to acknowledge that they cannot meet the requirements for their due process claim; they state that "[t]he School District would be absolutely correct if Plaintiffs were seeking pecuniary damages . . . ." P. Resp. (ECF No. 46) at 14. But plaintiffs maintain that they do not think they have to meet the requirements set out in the case law because they seek equitable relief, not money damages. The court disagrees.

Plaintiffs do not make clear why the relief they seek is relevant when determining whether they have plausibly pleaded a claim or why the substantive due process case law in this circuit would not apply. To survive a motion to dismiss under Rule 12(b)(6), the plaintiffs must plausibly plead a *claim* (i.e., a cause of action) for relief. *See Twombly*, 550 U.S. at 555. Consequently, the question the court must decide is whether the plaintiffs have plausibly pleaded their due process claim, and Fifth Circuit case law analyzing the requirements for such a claim is controlling. The precise relief that plaintiffs seek is not relevant to this inquiry. *See Excel Mktg. Solutions, Inc. v. Direct Fin. Solutions, LLC*, 2011 WL 1833022, at *4 (N.D. Tex. 2011) (Fitzwater, C.J.) ("Injunctive relief is an equitable remedy, not an independent cause of action."); *see Sanchez v. Wells Fargo Bank, N.A.*, 2020 WL 2086549, at *3 (W.D. Tex. Apr. 30, 2020) (stating that a request for an injunction was not a cause of action and should be dismissed when substantive legal claims are not pled).

barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Breen v. Tex. A & M Univ.*, 485 F.3d 325, 332 (5th Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)) (internal quotation marks omitted). "The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs." *Id.* "The Court has emphasized that 'because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended,' courts should be 'reluctant to expand the concept of substantive due process.'" *Id.* at 332-33 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

"When a plaintiff complains of abusive executive action, substantive due process is violated 'only when [the conduct] can properly be characterized as arbitrary, or conscience shocking in a constitutional sense.'" *Id.* at 333 (alteration in original) (quoting *Cnty. of Sacramento*, 523 U.S. at 847) (quotation marks omitted). "Negligent acts, for example, are insufficient to trigger a substantive due process violation." *Id.* (citing *Cnty. of Sacramento*, 523 U.S. at 849) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

"While it is clear that individuals have a substantive due process right to be free from state-occasioned bodily harm, it is equally clear that the Constitution does not, as a general matter, impose upon state officials a duty of care to protect individuals from any and all private harms." *Id.* (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process

Clause.")).

The Fifth Circuit has recognized two possible exceptions to this general rule, rooted in the language of *DeShaney*. *Id.* First, under the "special relationship" exception, "the Constitution imposes upon the state a duty of care towards individuals who are in the custody of the state." *Id.*; *DeShaney*, 489 U.S. at 199-200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *see also Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 526 (5th Cir. 1994).

Second, "some language from *DeShaney* has been read to suggest that state officials also have a duty to protect individuals from harm when their actions created or exacerbated a danger to the individual." *Breen*, 485 F.3d at 333; *DeShaney*, 489 U.S. at 201 ("While the State may have been aware of the dangers that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). "This latter exception mentioned in *DeShaney* is often recognized as the primary source for what has been termed the state-created danger theory." *Breen*, 485 F.3d at 333 (footnote omitted).

i

The special relationship exception does not apply here. Plaintiffs do not rely on or mention a "special relationship" between Junior and DISD. But even if they did, the Fifth Circuit has consistently held that a student–school relationship cannot be a basis for the "special relationship" exception. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel.*

*Keys*, 675 F.3d 849, 857 (5th Cir. 2012) (en banc) ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors."); *S.M. v. Sealy Indep. Sch. Dist.*, 2021 WL 1599388, at *8 (S.D. Tex. Apr. 23, 2021) (Rosenthal, C.J.) ("The Fifth Circuit has held that a public school does not have a special relationship with its students for the purposes of the Due Process Clause."); *see also Villalon v. City of McAllen*, 2022 WL 1547759, at *6 (S.D. Tex. Apr. 7, 2022) ("The scope of this [special relationship] exception is narrow, such that the Fifth Circuit has extended it to circumstances involving only incarcerated prisoners, individuals involuntarily committed to institutions, or children in foster care."), *rec. adopted*, 2022 WL 1540425 (S.D. Tex. May 16, 2022).[10]

ii

The state-created danger exception does not apply here. Plaintiffs neither rely on nor mention the state-created danger exception. But even if they did, their argument would fail for two reasons. First, although the Fifth Circuit in *Leffall* discussed the state created danger

---

[10]The court also notes that some cases suggest that even if a special relationship *did* exist between the student and school, the relationship would not exist outside of the school day (i.e., outside when the student is required to attend school). *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 422 (5th Cir. 2004); *Leffall*, 28 F.3d at 529 ("[E]ven though [plaintiffs] may have been compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended."); *Cano v. Harlandale Indep. Sch. Dist.*, 2020 WL 7385843, at *6 (W.D. Tex. Dec. 16, 2020) ("Cano's injuries occurred during a dance team practice, an extracurricular activity in which she was not required or mandated by law to participate. Cano's pleadings therefore do not sufficiently allege the special relationship . . . ."). According to the SAC, Wheately shot Junior during an after-school basketball game.

theory and set forth the elements necessary to establish the claim as a basis for liability, the panel "ultimately held that even if the state-created danger theory was constitutionally sound, the plaintiff failed to meet the necessary elements. Subsequent § 1983 cases predicated on the state created danger theory similarly pretermit the issue." *Saenz v. City of McAllen*, 396 Fed. Appx. 173, 176-77 (5th Cir. 2010) (per curiam). In other words, the Fifth Circuit has not recognized the exception. *See Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022) ("We have 'repeatedly declined to recognize the state-created danger doctrine.'" (quotation omitted)); *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020); *Robinson v. Webster Cnty., Miss.*, 825 Fed. Appx. 192, 196 (5th Cir. 2020) (per curiam) ("[T]his Court has 'repeatedly noted' the unavailability of the [state-created danger] theory in this circuit." (quotation omitted)), *cert. denied*, 141 S. Ct. 1450 (2021). Nor have district courts applied the exception. *Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 13568, at *3 (N.D. Tex. Jan. 4, 2012) (Fitzwater, C.J.) ("[B]ecause the state-created danger exception to *DeShaney* is not recognized in this circuit, the court dismisses [plaintiffs'] § 1983 claim to the extent it is based on an alleged violation of the Due Process Clause of the Fourteenth Amendment."); *see Doe on Behalf of Doe v. Dall. Indep. Sch. Dist.*, 534 F.Supp.3d 682, 690 (N.D. Tex. 2021) (Scholer, J.) ("[T]he Fifth Circuit, however, does not recognize state-created danger as a viable claim."); *Rideau v. Keller Indep. Sch. Dist.*, 2012 WL 12885087, at *3 (N.D. Tex. Jan. 31, 2012) (Means, J.); *see also Villalon v. City of McAllen*, 2022 WL 1547759, at *9 (S.D. Tex. Apr. 7, 2022), *rec. adopted*, 2022 WL 1540425 (S.D. Tex. May 16, 2022).

Second, even if the Fifth Circuit did recognize this exception, the elements of the state created danger theory would not be plausible pleaded here. "[T]o recover on a state-created danger claim, the plaintiff must show that the harm to the plaintiff resulted because (1) the defendant's actions created or increased the danger to the plaintiff, and (2) the defendant acted with deliberate indifference toward the plaintiff." *Breen*, 485 F.3d at 334-35. The claim also requires "an identifiable victim." *Id.* at 335.

Plaintiffs have not alleged that DISD affirmatively placed any student—including Junior in particular—in danger. *See Moore v. Dall. Indep. Sch. Dist.*, 370 Fed. Appx. 455, 457-58 (5th Cir. 2010) (per curiam); *Reed v. Kerens Indep. Sch. Dist.*, 2017 WL 2463275, at *16 (N.D. Tex. June 6, 2017) (Ramirez, J.). Nor have they alleged that DISD knew of a threat to Junior. Assuming *arguendo* DISD was aware that Wheately owned a gun and had threatened others with it,[11] a state-create danger theory requires more than a school district's general awareness of danger. *Pierce v. Hearne Indep. Sch. Sch. Dist.*, 2014 WL 11308099, at *10 (W.D. Tex. June 19, 2014) ("General awareness of the dangerousness of a school activity, even if extremely risky in nature, cannot support a finding of deliberate indifference if the school district was unaware of the precise risk of the actual incident that caused the student's injury."). The Fifth Circuit has explained that the "state-created danger theory is inapposite without a known victim." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 424 (5th Cir. 2006) (quotation omitted); *Lester v. City of Coll. Station*, 103 Fed. Appx. 814, 815-16

---

[11]As DISD points out, plaintiffs do not allege that DISD had seen Wheately's gun on social media—only that it knew he had a propensity for violence.

(5th Cir. 2004) (per curiam) ("[E]ven if it is assumed that the state-created-danger theory applies, liability exists only if the state actor is aware of an immediate danger facing a known victim." (citing *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999)).[12]

At best, plaintiffs' allegations show that DISD knew of some deficiency in its security policies and was aware of the potential for Wheately to engage in some type of violence with a gun. But beyond these allegations, there are no plausibly pleaded facts that the school was aware of an immediate danger to Junior. *See Yarbrough v. Sante Fe Indep. Sch. Dist.*, 2022 WL 885093, at *2 (5th Cir. Mar. 25, 2022) (holding that even though football presented dangers, there was no "immediate or specific danger to the players").[13]

Accordingly, the court dismisses plaintiffs' Fourteenth Amendment equal protection and due process claims with prejudice.

V

The court now considers plaintiffs' alternate request for leave to amend their complaint for a third time.

---

[12]For example, in *Magee* the plaintiffs alleged that school officials received complaints about the school's student check-out policy. *Id.* at 865. And despite this knowledge, the school allowed a man to check-out a student and molest her. *Id.* at 853. The court "cautioned against finding liability under the state-created danger theory based upon an ineffective policy or practice in cases where the plaintiff's injury is inflicted by a private actor." *Id.* at 866. At best, the court held, the allegations showed that the school was aware of some deficiencies in its policies, but not that it knew of imminent danger to the student's safety. *Id.*

[13]Because the court concludes that plaintiffs have not plausibily pleaded a constitutional violation, it need not reach whether they have plausibly pleaded the other elements of their *Monell* claim.

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). But "[g]ranting leave to amend . . . 'is by no means automatic.'" *Hoffman v. L & M Arts*, 2012 WL 4321739, at *4 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). In deciding whether to grant leave to amend, "[t]he court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

There are substantial reasons to deny plaintiffs' request for leave to amend. They have been given two opportunities to amend already. And, as DISD points out, plaintiffs have asserted claims haphazardly, forcing DISD to respond, and then withdrawn their claims. For example, in their most recent amendment to their complaint—their SAC—plaintiffs mentioned multiple constitutional provisions in passing, forcing DISD to respond to them in its motion to dismiss. Plaintiffs then appeared to withdraw these claims or maintain that they had never asserted them in the first place. *See supra* note 6. Finally, as plaintiffs' response shows, they themselves acknowledge the strength of DISD's arguments to dismiss their claims and can only offer meritless arguments in response. *See id.* note 9. The court therefore holds that allowing plaintiffs to amend their complaint a *third* time would be futile,

would cause delay, and would unduly prejudice DISD.

VI

Although DISD has not moved to dismiss plaintiffs' claims against John Doe Company I and John Doe Company II, plaintiffs filed their original complaint nearly seven months ago, have since amended their complaint twice, and still have not identified either defendant. Accordingly, the court orders that, within 14 days, plaintiffs must identify the two John Doe defendants. *See Animas v. Balcon Quiteno Inc.*, 2016 WL 1271478, at *2 (E.D.N.Y. Mar. 30, 2016) (granting the plaintiff 14 days to identify John Doe defendants); *Napier v. Doe*, 2010 WL 201209, at *3 (E.D. Mich. Dec. 29, 2009) ("On November 16, 2009, [the District Judge] issued an order requiring Plaintiff to provide the name and mailing address of the John Doe defendant no later than December 6, 2009."), *rec. adopted*, 2010 WL 201209 *1 (E.D. Mich. Jan. 15, 2010); *see also Porter v. Nationstar Mortgage Servs.*, 2017 WL 2493150, at *2 (W.D. Tenn. June 9, 2017) (dismissing John Doe defendants); *Miley v. Jones Cnty. Jail*, 2007 WL 2159334, at *8 (S.D. Miss. July 25, 2007).

\* \* \*

Accordingly, for the reasons explained, the court grants DISD's motion to dismiss and enters a Rule 54(b) final judgment in favor of DISD today. The court also denies plaintiffs' alternate request for leave to amend and orders that they identify the John Doe defendants

within 14 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

August 3, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 20 -